IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| ALICIA MCFADDEN | ) | |
| | ) | |
| & | ) | |
| | ) | |
| CHAUVON MCFADDEN | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No:_____ |
| | ) | |
| | ) | |
| EXPERIAN INFORMATION | ) | |
| SOLUTIONS, INC. | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiffs Alicia McFadden and Chauvon McFadden ("Plaintiff"), by and through counsel, bring this Complaint against Defendant Experian Information Solutions, Inc ("Defendant" "Experian") on the grounds and in the amounts set forth herein:

### Preliminary Statement

1. The McFaddens had a loan with TD Auto Finance on their current vehicle and as part of the purchase of a different vehicle they discussed possibly trading in that one. The original paperwork did include a trade vehicle, but it was later amended, and the final sales agreement removed the trade in. Unfortunately, the accounting department at the dealership mistakenly processed the first deal and promptly paid off their other vehicle. TD Auto Finance accepted the loan payoff, processed the payment, closed the account, sent the payoff letters and released its lien on the vehicle. TD Auto Finance then reported to Experian that the loan had been paid in full with a $0 balance. Both TD Auto Finance and the dealership were aware of the problem and tried to reverse it, but TD Auto Finance refused. Once it closed out the account and released its lien on the vehicle, the bank was

unwilling to do anything to reinstate the loan and return it to the *status quo ante*. In what can only be described as a bizarre turn of events, seven months after the pay off the dealership requested TD Auto Finance to refund their money, and the bank agreed. What TD Auto Finance did next is what aggravated the situation with the McFaddens and violated all norms of credit reporting. Months before it even refunded the payoff funds to the dealership, TD Auto Finance went back into its accounting records, reversed the payoff effective seven months prior (*i.e.* the same day that it was received) and showed the account as defaulted and charged off. As a result of this improper account modification (while it was still in possession of the entire payoff amount) the account data immediately updated to show 30, 60, 90, 120 days late and charged off with a past due amount of about $46,000. The McFaddens disputed the charged off account data with Experian, sent it documentation to prove that the account had been paid in full and satisfied, but Experian refused to properly reinvestigate or correct the credit reporting. Despite multiple disputes with extensive evidence and documentation to prove what had happened, Experian continued to report the new and inaccurate data causing the McFaddens significant damage. To further violate the statute, Experian failed to send the McFaddens the results of their reinvestigation. Without these results, it is impossible to determine exactly what Experian did and what other violations of the FCRA it committed, so discovery will be necessary to determine the total extent of the violations. The Plaintiffs bring this case against Experian for its violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 *et. seq.* based upon its inaccurate, negligent, and reckless internal processes and investigations into a disputed TD Auto Finance account. Experian violated the FCRA by failing to conduct reasonable reinvestigations because it failed to remove an account from the Plaintiffs' credit report

with clearly factually inaccurate and/or misleading information. Plaintiffs demand actual damages, punitive damages, statutory damages, attorneys' fees, and costs based upon Experian's actions.

**Parties**

2. Plaintiffs Alicia McFadden and Chauvon McFadden are natural persons. Plaintiffs are residents of the Commonwealth of Virginia and are a "person" and "consumer" as defined by the FCRA at 15 U.S.C. §1681a(b) and (c) because they are individuals.

3. Defendant Experian Information Solutions, Inc. (hereinafter "Experian"), is a foreign limited liability company with a principal office address in California. Experian is a consumer reporting agency, as defined in section 1681(f) of the FCRA, regularly engaged in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports, as defined in section 1681a(d) of the FCRA, to third parties. Experian regularly conducts these business activities in the Eastern District of Virginia by providing credit reports and other products to consumers and businesses in the Alexandria division of the Eastern District of Virginia.

**Jurisdiction & Venue**

4. This court has jurisdiction pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. § 1681(p). Venue is proper in this jurisdiction. Plaintiffs reside in the Alexandria Division of the Eastern District of Virginia and that forum is the forum most convenient for the adjudication of their claims. Defendant Experian is a resident of the Alexandria Division of the Eastern District of Virginia because it is subject to the court's personal jurisdiction by providing credit reports and other products to consumers and businesses in this division and district.

**Factual Allegations**

5.  Plaintiffs owned a 2020 Mercedes Benz GLE class that they had financed with TD Auto Finance.

6.  As of June 2022, Plaintiffs had made every automobile installment loan payment on time with TD Auto Finance.

7.  On or about June 30, 2022, Mr. McFadden went to an automobile dealership to inquire about purchasing another vehicle, a 2020 Mercedes Benz GLS Class. Mr. McFadden ultimately purchased the 2020 Mercedes Benz GLS on June 30, 2022.

8.  As part of the negotiations for the GLS, the parties discussed trading in their other Mercedes. The McFaddens did not bring that vehicle to the dealership, and the original agreement to trade the vehicle was reversed such that the trade vehicle was removed from the transaction.

9.  Despite the fact that the parties agreed that the trade vehicle would not be included in the transaction, the dealership's finance department treated the transaction as if they had. Based upon that mistaken belief, the dealership tendered a pay-off check to TD Auto Finance.

10. On July 8, 2022, TD Auto Finance accepted the funds from the dealership for the pay-off of the 2020 Mercedes Benz GLE. TD Auto Finance also refunded the last regular monthly payment that the Plaintiffs made on the car loan.

11. TD Auto Finance released the lien on the 2020 Mercedes Benz GLE on July 16, 2022 and issued a letter to the Plaintiffs informing them that the account was paid in full as of July 8, 2022.

12. The dealership discovered its mistake in making the payoff on the 2020 Mercedes Benz GLE but failed to resolve the situation that it had caused. At that point the most logical resolution would have been to reverse the payment and reinstate the loan, but apparently TD Bank would not allow that.

13. Once the payoff had been received and TD Bank had released its lien on the vehicle, TD Bank closed the auto loan and was unwilling to reopen or reinstate it. At that point, the McFaddens could no longer access the loan information online, their auto payment had been cancelled and TD Bank reported to the credit bureaus that the loan had been paid and satisfied with a $0 balance.

14. For reasons that have not been explained by TD Bank and need to be investigated through discovery, it decided to refund the payoff funds to the dealership more than seven months later. To make matters even more bizarre, TD Bank reported to Experian that the account was in default and charged off as a bad debt before it even refunded the funds to MB of Hunt Valley. While TD Bank had the full amount of the payoff, it adjusted its accounting entry to show that the payoff in July had been reversed.

15. Based upon information and belief, all of this information would have been available to Experian as part of any credit dispute reinvestigation. Experian engages in a mostly automated dispute reinvestigation process that does not consider account level data maintained by Experian in conjunction with the consumer credit dispute information after receiving an automated consumer dispute response from the furnisher. As a result, Experian never conducts a holistic review of Experian account level data with information provided as part of the consumer dispute reinvestigation process.

16. Instead of resolving the problem, TD Auto Finance began falsely reporting to the credit bureaus that this loan that had been previously credit reported as paid in full with a $0 balance, was now past due and in default for the very same time period when the loan had been marked paid in full on time.

17. Because the Plaintiffs were never late on a payment on the loan, their last payment had been returned to them, and TD Auto Finance closed the account so they no longer could make payments, it is both factually inaccurate and misleading for TD Auto Finance to credit report this closed account as 30 days late 60 days late etc. on the Plaintiffs credit history. Experian retains account level data in its system that can show how the data reported by TD Auto Finance changed over time. Experian should have used this data as part of the reinvestigation process to correct the trade line as its data changed in a manner that made its credit reporting inaccurate and misleading over the passage of time.

18. As joint obligors on the loan, TD Auto Finance was inaccurately reporting the account on both Mr. and Mrs. McFadden's credit files.

19. TD Auto Finance's actions are inconsistent and contradictory. After closing the account and no longer accepting monthly payments, it proceeded more than seven months later to report that the Plaintiffs had fallen behind on making payments that TD Auto Finance would no longer accept.

20. Because the Plaintiffs were not getting any assistance from the car dealership or TD Auto Finance to change the clearly inaccurate account credit reporting, the Plaintiffs disputed the credit reporting of the TD Auto Finance account with Experian.

21. The credit reporting agencies, like Experian, were in the best position to resolve the Plaintiffs credit reporting inaccuracies because the objective evidence clearly

demonstrated the inherent problems with the credit reporting for the account. This was not a routine situation where a consumer defaulted on an automobile loan. The Plaintiffs had contracts, payoff letters, releases of the lien, and a payment history that demonstrated what had happened and why the data reported by TD Auto Finance was inconsistent with prior data, misleading, and not maximum possible accuracy about the account.

22. The FCRA requires maximum possible accuracy regarding credit data reported by credit reporting agencies. Misleading information is inaccurate information because it does not meet the maximum possible accuracy standard. "Accurate" and "Truthful" information in the FCRA context means that when credit data is viewed in its entirety and context, the information does not create a false or unfair impression about the consumer's creditworthiness.

23. Experian never had to resolve any legal or factual disputes to report accurate credit data because it knew TD Auto Finance reported two different types of data for the same periods of time. Given that two different types of credit reporting cannot be true for the exact same time periods, the most reasonable course of action for Experian was to suppress the credit reporting of the TD Auto Finance account because of the circumstances related to the account as whole.

24. On or about June 26, 2023, the Plaintiffs each mailed a credit dispute letter to Experian to have the inaccurate and misleading TD Auto Finance account credit reporting removed from their respective credit reports. The credit dispute letter was descriptive and detailed the events related to the account, how the account should not have been handled the way it was by TD Auto Finance, and why the credit reporting was factually inaccurate because the account could not be past due for payments on an account

that TD Auto Finance would no longer accept or post. The letter also included attachments including the purchase contract showing that there was no trade-in and the pay-off letter from TD Auto Finance, which demonstrated that the loan was paid off and terminated. The irrefutable documentation proved that TD Auto Finance considered and reported the account paid in full when the dealership tendered the payoff check. The Plaintiffs requested that the account be deleted from their credit history because the manner that Experian reported the account was inaccurate and misleading given the totality of the circumstances.

25. Based upon documents available to the Plaintiffs, Experian never mailed dispute results to either Plaintiff after it received the credit disputes. Plaintiffs through counsel requested documents related to their Experian credit dispute history, but said documents were never provided. Based upon information and belief, Experian received the credit dispute letters sometime after July 3, 2023 and never mailed consumer dispute results to either Plaintiff.

26. Based upon information and belief, Experian attempts to contact consumers through email addresses to have them log into Experian in order to receive their consumer dispute reinvestigation results. As part of the log-in process, Experian will include an arbitration agreement in the account terms, so it can thereafter claim that the consumer agreed to arbitrate any claims with it that may arise. Discovery is necessary as to whether Experian engaged in this practice as to the Plaintiffs.

27. Because the Plaintiffs still had problems with inaccuracies with their credit file, both Plaintiffs filed credit dispute letters with the credit reporting agencies again in December 2023.

28. On December 1, 2023, the McFaddens once again disputed the reporting of the TD Auto Finance account with Experian by mailing a descriptive dispute letter that described the unusual circumstances of the transaction.

29. The dispute letter noted that TD Auto Finance mistakenly received a payoff check from Mercedes Benz of Hunt Valley. TD Auto Finance applied the payoff check to the account, marked the account paid, released the lien, and returned the last monthly payment that had been tendered for payment on the account.

30. The letter reported what they believed to be the case at the time, but after further investigation the facts became even worse than they had originally believed. Despite the fact that TD Auto Finance knew that the dealership created this problem and exacerbated it by improper processing, TD Auto Finance still refused to accept responsibility for its improvident and untimely actions. All of these events were documented in correspondence that TD Auto Finance issued to the Plaintiffs.

31. The credit dispute letter noted that TD Auto Finance refused to correct the credit reporting mess that it created on the account and reported as derogatory for lack of payment despite the fact that TD Auto Finance had closed the account and shut down access to the online payment portal for the account.

32. The credit dispute further noted that TD Auto Finance had sent the account to collections and that the Plaintiffs had disputed the validity of that collection account as well based on the circumstances of the loan.

33. The credit dispute letter also asked Experian what it did to reinvestigate the credit reporting as this was a highly unusual credit reporting situation.

34. Finally, the Plaintiffs requested that Experian added a consumer statement to their credit file because of the unusual nature of the account and transaction.

35. Once again, Plaintiffs did not receive results of the reinvestigation from Experian through the mail.

36. Plaintiffs reserve the right to amend their claims after reviewing any documentation or results of reinvestigation that Experian later claims to have issued to either Plaintiff.

37. Plaintiffs suffered an injury in fact in the form of loss of time spent disputing Experian's inaccuracies and reviewing responses to their disputes, as well as worry, frustration, and emotional distress damages related to the effect of the inaccurate credit reporting.

38. Fourth Circuit case law is clear that emotional distress damages are proper based upon Plaintiff's testimony as to the effect of the violation of the FCRA on the Plaintiff. *See Sloane v. Equifax Information Services, LLC*, 510 F.3d 495 (4th Cir. 2007); *See also Robinson v. Equifax Information Services, LLC*, 560 F.3d 235, (4th Cir. 2009). This circuit's case law on emotional distress damages is consistent with case law in other circuits: "damages for violations of the FCRA allow recovery for humiliation and embarrassment or mental distress even if the plaintiff has suffered no out-of-pocket losses. Moreover, a consumer may be awarded actual damages even if she is able to obtain credit after explanation of the inaccuracy." *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 719 (3rd Cir. 2010). The Ninth Circuit has also noted that actual damages include recovery for distress and humiliation and noted, "Moreover, no case has held that a denial of credit is a prerequisite to recovery under the FCRA." *See Guimond v. Trans Union Credit Info.*

*Corp.*, 45 F.3d 1329, 1333 (9th Cir. 1995). The Fourth Circuit similarly noted, "On his FCRA claims Dalton need only show that he suffered damages from the false report, regardless of how Sumitomo reacted to the report. Specifically, Dalton alleges that he suffered emotional distress and loss of reputation as a result of the false report. Damages for such injuries are recoverable under FCRA." *Dalton v. Capital*, 257 F.3d 409, 418 (4th Cir. 2011).

39. The Plaintiffs experienced emotional distress when Experian never told them what if anything it did to solve their credit reporting nightmare, which showed that their credit file inaccurately reported a defaulted TD Auto Finance account.

## COUNT I
## Fair Credit Reporting Act
## 15 U.S.C. §1681i

40. Plaintiff incorporates paragraphs one (1) through thirty-nine (39) as if fully stated herein.

41. The FCRA's stated purpose is to require consumer reporting agencies to adopt reasonable procedures so that information about consumers is confidential, accurate, and relevant. *See* 15 U.S.C. §1681(b). "The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Guimond v. Trans Union Credit Information Comp.*, 45 F.3d 1329,1333 (9th Cir.). The FCRA's intent to protect consumers supports a liberal construction of the act. *Id.*

42. In an effort to implement an orderly systemic dispute process for investigations of inaccuracies of information in a consumer's credit file, the FCRA requires

that a consumer first notify a CRA of a dispute of information in their credit file. After receiving notice of a consumer dispute, 15 U.S.C. §1681i(a) requires a CRA to conduct a reasonable and independent investigation of the information it is reporting on the consumer and states:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by a consumer and the consumer notifies the agency directly, or indirectly through a reseller, of such dispute the agency **shall**, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the deleted information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.  15 U.S.C. §1681i(a)(1)(A) (emphasis added).

43. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the Plaintiffs for damages under 15 U.S.C. §1681n and §1681o because it violated numerous provisions of the FCRA at 15 U.S.C. §1681i.

44. Based upon information and belief, Defendant Experian through its established systems and procedures negligently and willfully violated the FCRA at §1681i(a) by failing to reinvestigate reasonably and/or recklessly the credit disputes in July 2023 by failing to review and consider the credit dispute packages that it received from both plaintiffs individually.

45. Based upon information and belief, Defendant Experian through its established systems and procedures negligently and willfully violated the FCRA at §1681i(a) by failing to reinvestigate reasonably and/or recklessly the credit disputes in

December 2023 by failing to review and consider the credit dispute packages that it received from both plaintiffs individually.

46. The FCRA specifically requires at 15 U.S.C. §1681i(a)(4) that Experian in conducting any reinvestigation, "shall review and consider all relevant information submitted by the consumer," which Experian could not possibly have undertaken when it received the credit dispute packages based upon the wealth of information that it received from the Plaintiffs regarding the dealership pay-off, closure of the account, and subsequent return of payment.

47. Experian violated 15 U.S.C. 1681i(a)(6) because it did not provide written notice to either Plaintiff of the results of the reinvestigation by mail. Based upon information and belief, Experian violated this provision as to both Plaintiffs as to both the consumer credit disputes that Experian would have received in July 2023 and December 2023.

48. Plaintiffs suffered actual damages including time spent addressing the problem, improper denial of access to credit, damages to their credit rating and score, and emotional distress damages.

49. Punitive damages are required to change Experian's reckless disregard for compliance with the FCRA. Experian's dispute investigation process in this case demonstrates the recklessness that it handles consumer disputes because Experian shirks its responsibility to conduct meaningful and reasonable investigations by exclusively relying on the automated ACDV process, which is nothing more than a data conformity review. Experian does not properly reinvestigate disputes as to what data can be verified and what data is misleading, it has established a procedure designed to evade its obligations

as set forth in the FCRA and §1681i in particular. Experian simply relied on the ACDV process without any real consideration of the circumstances related to the credit reporting on the Plaintiffs' Experian credit file. These actions were in reckless disregard for the grave statutory duties that Experian had for reporting accurate information. The jury should award substantial punitive damages based on these facts.

## COUNT II
### Fair Credit Reporting Act
### 15 U.S.C. §1681e(b)

50. Plaintiff incorporates paragraphs one (1) to forty-nine (49) as if fully stated herein.

51. Defendant Experian has willfully and/or negligently violated the provisions of the FCRA by willfully and/or negligently failing to comply with its obligations as a credit reporting agency under the FCRA. Experian is liable to the plaintiff for damages under 15 U.S.C. §1681n and §1681o because it violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the plaintiff's credit report.

52. Experian willfully and/or negligently violated the Fair Credit Reporting Act at 15 U.S.C. §1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of information reported about Plaintiffs because Experian is believed to have provided inaccurate credit file information about Plaintiffs to users of information related to the Plaintiffs credit history including Capital One. Additional discovery is necessary regarding what Experian published about Plaintiffs as they were trying to obtain funds to payoff the TD Auto Finance account. The Plaintiffs are also believed to be the subjects of account review inquiries that would have included Experian credit information.

53. Plaintiffs suffered actual damages including time spent addressing the problem, improper denial of access to credit, and emotional distress damages.

54. Punitive damages in this matter are also warranted because Experian displayed a reckless disregard for publishing information when a consumer notifies it of how factually challenged the credit reporting for the account has been. Experian knows that it is unreasonable to publish inaccurate information by simply parroting whatever the furnisher tells them to report. Experian is on notice from other verdicts in the Eastern District of Virginia that parroting furnisher responses may lead to a finding of FCRA liability Only substantial punitive damages will deter Experian from publishing inaccurate credit reports without considering all the information it contains on a consumer prior to publishing the report.

### Prayer for Relief

Wherefore, plaintiffs pray that the Court award the following relief:

a) compensatory damages against Experian;

b) punitive damages based upon Experian's repeated violations of the FCRA;

c) statutory damages against Experian based upon multiple violations of the FCRA;

d) interest, pre-judgment interest, costs and reasonable attorneys' fees incurred by the Plaintiffs;

e) all other further relief that this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury as to all issues against the defendant.

>Respectfully submitted,
>Alicia McFadden
>Chauvon McFadden
>
>_____
>By: Counsel

A. Hugo Blankingship, III, VSB 26424
Blankingship & Christiano, P.C.
11862 Sunrise Valley Drive, Suite 201
Reston, Virginia 20191
(571) 313-0412
(571) 313-0582